**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 11-cv-01011-REB

TERESA L. BUTLER,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

**ORDER AFFIRMING COMMISSIONER**

**Blackburn, J.**

    The matter before me is plaintiff's **Complaint** [#1]¹ filed April 15, 2011, seeking review of the Commissioner's decision denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

    Plaintiff alleges that she is disabled as a result of bipolar disorder, depression, obsessive compulsive disorder, and anxiety. After her applications for disability insurance benefits and supplemental security income benefits were denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on May

---

¹ "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

29, 2009.  At the time of the hearing, plaintiff was 26 years old.  She has a high school education with one year of college course work and past relevant work experience as a retail salesperson and day-care provider.  She has not engaged in substantial gainful activity since her alleged date of onset, December 1, 2006.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability insurance benefits or supplemental security income benefits.  Although the medical evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations.[2]  The ALJ found that plaintiff had the residual functional capacity to perform semi-skilled work at all exertional levels limited only by an ability to understand, remember, and carry out simple instructions.  Given these limitations, the ALJ concluded that plaintiff was able to perform her past relevant work.  He therefore found plaintiff not disabled at step four of the sequential evaluation.  Plaintiff appealed this decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social

---

[2]  The ALJ also considered the effect of plaintiff's obesity on her impairments, but found that it did not cause her other impairments to rise to listing-level severity.  Plaintiff does not challenge this determination on appeal.

Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).   However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  *See **Kelley v. Chater**,* 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

> 1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
>
> 2. The ALJ  must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.
>
> 3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.
>
> 4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.
>
> 5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f).  **See also Williams v. Bowen** 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  **Bowen v. Yuckert**, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987).  The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy.  **Id.**  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  **Casias v. Secretary of Health & Human Services**, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence.  **Hamilton v. Secretary of Health and Human Services**, 961 F.2d 1495, 1497-98 (10th Cir. 1992); **Brown v. Sullivan**, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  **Brown**, 912 F.2d at 1196.  It requires more than a scintilla but less than a preponderance of the evidence.  **Hedstrom v. Sullivan**, 783 F.Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  **Musgrave v. Sullivan**, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  **Thompson v. Sullivan**, 987 F.2d 1482, 1487 (10th Cir. 1993).  Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner.  **Id.**

### III. LEGAL ANALYSIS

Plaintiff argues on appeal that the ALJ erred at steps 2, 3, and 4 of the sequential evaluation process. She maintains that the ALJ (1) failed to consider whether her obsessive compulsive disorder ("OCD") constituted a severe impairment at step 2; (2) failed to more fully articulate his reasons for finding that her severe impairments did not meet the paragraph "C" criteria of the relevant listings at step 3; and (3) failed to consider the effects of stress on her ability to work and not making a more searching inquiry regarding the demands of her past relevant work at step 4. Separately, she contends that the ALJ failed to adequately discharge his duty to develop the record.[3] Finding no reversible error in the ALJ's determination, I affirm.

Plaintiff accurately observes that the ALJ neglected to consider her OCD diagnosis at step 2 of the sequential evaluation. (*See* Tr. 21 (finding that plaintiff suffered from severe impairments of bipolar disorder with psychotic features, anxiety disorder (not otherwise specified), and a history of schizophrenia).) Nevertheless, plaintiff fails to point to any evidence suggesting that her OCD constituted more than a "slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." **Social Security Ruling**

---

[3] In her reply brief, plaintiff suggests for the first time that the ALJ also erred in failing to afford controlling weight to the opinion of her treating psychiatrist, Dr. Stephen Bishop. I do not consider such belatedly raised arguments. *Homewatch International, Inc. v. Pacific Home Care Services, Inc.*, 2011 WL 1660612 at *3 n.5 (D. Colo. May 2, 2011). Nevertheless, the ALJ did consider Dr. Bishop's June, 2007, opinion limiting plaintiff to 20 hours of work per week and gave legitimate reasons clearly tied to the evidence of record for failing to afford it controlling weight. (Tr. 25-26.) *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995); *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).

**85-28**, 1985 WL 56856 at *3 (SSA 1985).  Although plaintiff's burden to establish severity at step 2 is *de minimis*, the mere fact of a diagnosis is insufficient to satisfy it. *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997).  My own review of the evidence reveals nothing to suggest that plaintiff's OCD diagnosis resulted in functional limitations that might be thought to affect her ability to work.[4]  Thus, any error in failing to acknowledge or discuss this alleged impairment undoubtedly was harmless.[5]  **See Bernal v. Bowen**, 851 F.2d 297, 303 (10th Cir. 1988).

Plaintiff next faults the ALJ for failing to more thoroughly explicate his reasons for finding that her schizophrenia and depression did not meet the paragraph "C" criteria of listings 12.03 and 12.04, respectively.[6]  Section 12.00 of the listings describes various mental disorders.  Each of the nine diagnostic categories identified therein is defined by three criteria: a statement describing the disorder (the capsule definition), a set of medical findings (the paragraph A criteria) and a set of impairment-related functional limitations (the paragraph B criteria).  Alternative functional criteria (the paragraph C criteria) are included for certain classes of disorders.  A claimant's impairment meets or equals a listed impairment, and therefore is presumed to be disabling, if the diagnostic

---

[4] Indeed, beyond the mere repetition of the diagnosis, the only record evidence of the disorder is a reference by plaintiff's therapist in September, 2006, to "[c]hecking beh[avior], [history] of step counting." (Tr. 275.)

[5] Plaintiff further suggests that the ALJ's failure to address OCD as an impairment at step two prevented him from properly considering whether that condition met the requirements of listing 12.08 at step 3 of the sequential evaluation.  Here again, however, plaintiff presents no argument or evidence to suggest that this alleged impairment would have met or equaled the listing, either singly or in combination with her other impairments.  Any error in this regard therefore is ultimately harmless.  *See Bernal*, 851 F.2d at 303.

[6] The ALJ also considered plaintiff's impairments under listing 12.06, which addresses anxiety disorders.  The paragraph C criteria for that listing, however, require proof of a "complete inability to function independently outside the area of one's home," a standard which plaintiff clearly does not satisfy.

description of the capsule definition and the criteria of both paragraphs A and B, or A

and C, where appropriate, are satisfied.  *Id.*, § 12.00A.[7]

The ALJ found that "[t]he record does not support evidence of the 'C' criteria."

(Tr. 22.)[8]  Contrary to plaintiff's argument, the ALJ went on to explain that these criteria

were "reflected in the discussion of the medical evidence below, including the

referenced medical records and the Psychiatric Review Technique Form . . . completed

by the Disability Determination Services." (Tr. 22.)  Indeed, as the ALJ correctly noted,

"the DDS assessments . . . are medical opinions that the claimant does not meet or

equal any listing of impairment." (Tr. 21; *see also* Tr. 229.)  *See* 20 C.F.R. §

404.1527(e); **Social Security Ruling 96-6p**, 1996 WL 374180 at *3 (SSA July 2, 1996)

---

[7] Paragraph B requires proof that a medically determinable impairment has resulted "in at least two of the following:  1.  Marked restriction of activities of daily living; or 2.  Marked difficulties in maintaining social functioning; or 3.  Marked difficulties in maintaining concentration, persistence, or pace; or 4.  Repeated episodes of decompensation, each of extended duration." 20 C.F.R., Pt. 404, Subpt. P., app. 1, §§ 12.04B & 12.06B.

[8] The paragraph C criteria for schizophrenia require

> C. Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03(C).  The paragraph C criteria for affective disorders (including depression) are identical, except insofar as they contemplate the existence of a "[m]edically documented history of a chronic affective disorder." *Id.* § 12.04(C).

("When an administrative law judge or the Appeals Council finds that an individual's impairment(s) is not equivalent in severity to any listing, the requirement to receive expert opinion evidence into the record may be satisfied by any of the foregoing documents [including the Psychiatric Review Technique Form] signed by a State agency medical or psychological consultant."). Thus, the ALJ did not simply issue a conclusion in the guise of findings, but appropriately relied on the medical evidence of record in reaching his conclusions that the paragraph C criteria were not satisfied.[9]

As for step 4, she suggests that the ALJ erred in failing to consider the effects of stress on her ability to work and not making a more searching inquiry regarding the demands of her past relevant work. The first of these arguments is plainly belied by the ALJ's opinion, which thoroughly considered plaintiff's family-related stressors and established that, although plaintiff did change jobs with some frequency, she was able to continue to work consistently throughout the period of her alleged disability, including work at the level of substantial gainful activity from January, 2008, through the date of the ALJ's decision. (Tr. 23-25, 39-40, 124-125.) (***See also*** Tr. 20 (noting that because

---

[9] Nor is it clear that any error that may have occurred in this regardless was not harmless. Plaintiff points to two apparent suicide attempts in August 2008 and October 2010 as evidence of decompensation sufficient to meet the requirements of paragraph C(1). Putting aside the fact that the second of these attempts occurred outside the time period considered by the ALJ, and to the extent that two such attempts more than two years apart could be characterized appropriately as "repeated" episodes of decompensation, neither episode appears to have been of "extended duration." (***See*** Tr. 427-436 (August, 2008, hospitalization lasting 5 days; actually indicating that plaintiff was not suicidal on admission); Tr. 440-445 (October, 2010, hospitalization for suicide attempt lasting 5 days).)

In addition, the evidence does not support plaintiff's suggestion that she could function only within a highly supportive living environment. While plaintiff lived off and on at Karis Community throughout the relevant time period, a fact noted by the ALJ, the evidence does not suggest that this living arrangement could properly be characterized as "highly supportive." Indeed, the entire thrust of the Karis Community appears to have been to enable residents to live and work independently, albeit within the broad guidelines provided by the program.

this "work started more than 12 months after the claimant's alleged onset date, the case cannot be decided at step one of the sequential evaluation process.").) Moreover, as the ALJ noted, plaintiff's reasons for leaving her various jobs were not clearly related to work-related functional limitations caused by her impairments, but rather due to considerations of, for example, her schedule or desire to find a different or better position. (*See* Tr. 23, 36-38, 281-282.) I thus perceive no reversible error in this regard.[10]

With respect to the ALJ's alleged failure to more fully consider the demands of plaintiff's past relevant work, the record contains more than sufficient evidence of the demands of plaintiff's prior jobs, including her own work history reports and testimony at the administrative hearing. Plaintiff does not argue or demonstrate that the ALJ's failure to more fully articulate these work-related demands in his opinion had any impact on her substantive rights. *See Bernal*, 851 F.2d at 303.

Similarly, plaintiff fails to show how any lapse by the ALJ in failing to request further records from plaintiff's various treatment centers was not ultimately harmless. The ALJ has an affirmative duty to fully and fairly develop the record as to any impairment suggested by the evidence. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997); *Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 360-61 (10th Cir. 1993). That duty is heightened when, as here, the claimant was unrepresented by counsel at the administrative hearing. *Carter v.*

---

[10] The ALJ also noted that plaintiff appeared to be aware of the Commissioner's $900 earnings limit for substantial gainful activity and was actively attempting to limit her income to less than this amount in order to be eligible for social security benefits. (Tr. 25, 293.) This observation, supported by the record, further undercuts plaintiff's suggestion that stress was the primary contributor to her alleged inability to work more or more consistently.

*Chater*, 73 F.3d 1019, 1021 (10th Cir. 1996).  Nevertheless, the ALJ need not "exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning." *Hawkins*, 113 F.3d at 1168.  Rather, he must use reasonable good judgment to ensure that the record fairly addresses the material issues.  *See id.*

This was not a case in which the medical and other evidence was insufficient to allow the ALJ to make an informed determination as to plaintiff's applications, or one in which a consultative examination would have been indicated.  *See id.* at 1169 (noting difference between case in which ALJ failed to obtain existing evidence and one in which he fails to order develop new evidence to fill gaps in scant medical record).  Substantial parts of the evidence plaintiff claims was not considered involves periods of time either well before her alleged date of onset or after the date of the ALJ's decision.  Plaintiff does not demonstrate how any of the evidence from the relevant time period might have changed the disability determination.  Indeed, it appears that much of this evidence was already before the ALJ, either in the form submitted to the Appeals Council or in some other format.

### IV.  ORDERS

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated April 30, 2012, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge